(42 South: 648.)

No. 16,134.

SCHEURRMANN v. VACCARO.

(Dec. 10, 1906. Rehearing Denied Jan. 7, 1907.)

1. SLANDER—EVIDENCE.

Damages claimed on the ground of slander are not sustained by the testimony.

2. FALSE IMPRISONMENT—EVIDENCE.

On the ground of false imprisonment, plaintiff, unjustly subjected to imprisonment, had good cause of complaint. She was unquestionably badly treated.

The bad treatment was not (satisfactorily in point of testimony) traced to defendant.

The plaintiff was not arrested and imprisoned for the theft, which defendant erroneously thought had been committed.

There was a trumped-up charge by the person who had plaintiff imprisoned, under which plaintiff was held for a few minutes.

3. SAME.

There is grave doubt regarding the complicity of defendant in the arrest and imprisonment, and for this reason no damages are allowed against defendant.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; George Henry Théard, Judge.

Action by Albertina Scheurrmann, widow of John F. Kern, against Lucas Vaccaro. Judgment for defendant, and plaintiff appeals. Affirmed.

Edward Rightor and James O'Connor, for appellant. Philip Joseph Patorno and Robert Hardin Marr, for appellee.

BREAUX, C. J. The suit before us is for damages.

Plaintiff was a servant of defendant. Her work consisted in washing clothes.

She was suspected of having stolen jewels from defendant's wife.

Not long after the suspicion had arisen, the jewels were found by the wife of defendant.

The accusation led to plaintiff's arrest on the 16th day of May, 1905.

Having been released a short time after the arrest, she brought this action, in which she charged defendant with having acted against her maliciously, falsely, and without probable cause.

It appears that defendant's wife carried a little chamois bag, containing her jewels, attached to her chemise. The clothing was given out to wash. This little bag disappeared at the time. Immediately after its disappearance it was suspected that it had been taken from the undergarment to which it was attached.

The morning following the night on which defendant's wife missed her jewels, plaintiff returned to the defendant's home about half past 6 in the morning to work. It was then that she was informed that jewelry of defendant's wife was missing.

Her complaint is that a policeman was brought over to the house, the facts assumed by the defendant were stated to the policeman, and she was told by the policeman that, unless she made a confession of the theft, the penitentiary would, perhaps, be her fate. She stated that she was innocent, and had nothing to do with the negress, who was also a servant in the house, and upon whom it seems some suspicion had fallen.

After setting forth in her petition a full

statement of the case, plaintiff demands $5,000 for the slander she suffered and the false arrest she endured.

The defendant controverted plaintiff's charges, and swore to a different condition to facts. Defendant stated to the policeman that he suspected both of his servants, more particularly the plaintiff. There was no one else about his house, save his wife and their children. This officer then questioned plaintiff in the presence of the defendant.

While denying all guilt, she offered to search for the missing property, and in company with the defendant's wife search was made by her in vain all over the house.

Shortly thereafter the other servant, a negress, returned to her work for defendant. She also denied knowing anything about the missing property.

They were both taken to the police station by the officer, who stated to defendant that sometimes accused persons would break down and confess their guilt on the way to the station.

The officer, and near him the black cook, walked in front of defendant and the plaintiff, who were walking about 15 feet behind the first two in front.

The defendant spoke to plaintiff about the crime and mentioned that it was a penitentiary offense, spoke to her of her children, and in an advisory way said that she should confess and return the property.

At the station the clerk, in accordance with the direction of the officer who had the two servants in charge, entered their names on the arrest book. This clerk asked about the charge to be entered against them. The officer's reply was "Dangerous and suspicious;" which charge was properly entered upon the arrest book.

The clerk testified that he then asked the defendant if he was the complainant. "Yes," he said in reply.

The officer before referred to as having the servants in charge testified that everything was done on the complaint of the defendant, and that he was present and knew all that took place.

The defendant as a witness denied these charges of the policeman.

We state here that the plaintiff and the other servant, the colored girl, were placed in jail in separate cells. A short time afterward, less than half an hour, the jewels were found by the defendant's wife. The defendant returned to the station, and said that he had found the jewels, and, in consequence, abandoned the charge.

Defendant testified that he in good faith suspected these servants, that he mentioned his suspicion to the policeman, that he did not suggest to the policeman to make an arrest, but left the whole matter to his judgment.

In a carefully prepared opinion the judge of the district court said that there was no doubt of the mortification and humiliation of plaintiff, but that she was not entitled to reparation at the hands of the defendant; that he was not the cause of her sufferings; that she was the victim of the questionable methods of the police in investigating crimes; that her recourse was not against the defendant.

He rejected plaintiff's demand.

In our opinion, and in that of the district judge, as we read his decision, the facts and circumstances did not warrant the conclusion that in the arrest of plaintiff there was any probable cause. The arrest was illegal and unauthorized.

This arrest was the result of a very earnest, but unfortunate, attempt on the part of the police officer to find jewels which the defendant thought had been stolen.

If a little more precaution had been taken, it would have been best for all concerned. The police officer was entirely too zealous.

We do not think that there was any im-

propriety on the part of the defendant in calling on the police officer to institute search, nor was there any impropriety in propounding the questions which were propounded to plaintiff; for, after all, the articles of jewelry were lost—stolen, as defendant thought—and the undergarment to which he thought they were attached had passed through plaintiff's hands and was returned to the hands of defendant's wife less the jewels pinned thereon, because taken by plaintiff, as she thought, 'in regard to which the result showed she was mistaken.

If the policeman by whom the arrest was made had reasonable grounds to suspect that a theft had been committed, he could have held the plaintiff for a short time, as he did while at defendant's house, without rendering himself liable for damages for false imprisonment. But the policeman evidently had arrived at the conclusion that the facts did not prove theft, and did not warrant him in holding plaintiff. But he did not act upon that conclusion. In order to prosecute the case further, he suggested that the two servants of defendant would have to be held under some charge, and that the only charge under which he could hold them was that of being "dangerous and suspicious," although there was not a word upon which to base the charge.

It was on the order of this overzealous officer that the clerk of the police station made an entry of "dangerous and suspicious" against the two servants, and immediately thereafter these servants were locked up.

The officer swore that the entry in this book at the station was made with the knowledge and consent of the defendant.

All of the steps taken in connection with this ill-advised arrest seem to have been loosely conducted. No report was ever made of the case at "Headquarters," to quote a word of the evidence. The officer by whom the arrest had been made ordered that no report be made. On the entry the words "Null and void" were indorsed.

Plaintiff testified that defendant was not present when the charge was made against her, and when it was entered on the book at the station, and when she was placed in jail, from which she was released in a few minutes thereafter.

This evidence of the plaintiff is directly contradicted by the clerk at the station and by the officer who made the arrest.

We do not think that this contradiction by the police officer is well sustained.

The defendant trusted the officer by whom the arrest was made, and who led him too far in search for the lost jewels. He evidently thought that the officer was following the usual steps taken in such cases.

Defendant can scarcely be held for damages, in view of the conflict of testimony of plaintiff, corroborated by himself and that of the police officer.

The uncertainty created, regarding the part the defendant took in the matter, by the conflict of testimony and the nature of the whole case, has led us to the conclusion that we should affirm the decision of the district court.

Unquestionably plaintiff was subjected wrongly to arrest. She was made the victim of irregularity, where there should have been intelligent action in making the arrest and in securing evidence to prove at whose instance the officer acted.

There is no question but that the defendant was not as careful in the matter of this assumed theft as he should have been. It remains that he placed his case in the hands of the police officer, and that the police officer through mistaken and ill-advised zeal, went too far.

In the attempt to extricate himself, he has sought to bring in defendant as the moving cause of all that was done.

The testimony has not made it clear that

the defendant committed himself to the extent that the police officer would have it.

In view of the facts, we must decline to hold the defendant liable.

For reasons stated, the judgment is affirmed.